## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **SUSAN POLK,** | |
| **Plaintiff,** | **Civil Action Case No.:** |
| **v.** | **1:19-cv-00930-CAP-CCB** |
| **WELLS FARGO BANK, N.A. (Inc.),** | |
| **Defendant.** | |

## AMENDED COMPLAINT

COMES NOW, Susan Polk ("Plaintiff"), individually, by and through her counsel of record, and files this Amended Complaint against Wells Fargo Bank, N.A., Inc., ("Defendant"), showing this Honorable Court as follows:

## NATURE AND BASIS OF ACTION

1.

This is an action for breach of contract, breach of implied covenant of good faith, false light invasion of privacy, violation of 12 U.S.C. §§ 2601 – 2617 ["Real Estate Settlement Procedures Act"], and for attorney's fees. Plaintiff seeks monetary and injunctive relief as a result of Defendant's conduct.

## THE PARTIES

### 2.

Susan Polk ("Plaintiff") is an individual that is a citizen of the State of Georgia.

### 3.

Wells Fargo Bank, National Association (Inc.) (d/b/a "Wells Fargo Bank, N.A.") is a foreign corporation registered to do business in the State of Georgia, with its principal place of business in the State of California.

## JURISDICTION and VENUE

### 4.

This is a diversity of citizenship action.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).

### 5.

The parties are citizens of different States, and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

### 6.

Additionally, this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as one of Plaintiff's claims involve a federal question.

7.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2), a substantial part of the events or omissions giving rise to the claims herein occurred in this district.

## **FACTS**

8.

Plaintiff is a long time, loyal customer of Defendant.

9.

At all times prior to this cause of action, Plaintiff consistently paid her debts on-time, and maintained a positive credit history.

10.

Plaintiff has exclusively banked with Defendant for over forty (40) years.

11.

As a result of the long-term, positive banking history that the parties had, Defendant offered to service the refinancing of Plaintiff's home loan.

12.

At all relevant times, Plaintiff resided at ███████████████████ ██████ (hereinafter "the residence").

13.

On October 25, 2016, Plaintiff refinanced her home loan for the residence with Defendant (hereinafter "the mortgage" or "Plaintiff's mortgage").

14.

On October 25, 2016, on the same date and time that the residence was refinanced, Defendant setup automatic, electronic payments ("automatic payments") for Plaintiff's new mortgage.

15.

 Defendant setup the automatic payments to withdraw from Plaintiff's Wells Fargo account, ending in ███ ("Plaintiff's Wells Fargo Bank Account").

16.

At all relevant times, Plaintiff's Wells Fargo Bank Account maintained a positive balance, which was always in excess of her monthly mortgage payments.

17.

Defendant setup the automatic payments to occur once a month on or before the due date for Plaintiff's mortgage.

18.

Defendant setup the automatic payments to be the exact amount of Plaintiff's mortgage payments, ████████████████████Dollars and ██████cents ($██████).

19.

On December 5, 2016, Defendant paid the mortgage, pursuant to the automatic payments setup on Plaintiff's Wells Fargo account.

20.

On or about January 3, 2017, Plaintiff went to 2204 Peachtree Road, N.W., Atlanta, Georgia 30309, one of Defendant's branches (hereinafter "Peachtree Biscayne Branch") to confirm that Plaintiff's January 2017 mortgage payment was coming out of her Wells Fargo Bank Account, as scheduled, pursuant to the automatic payments Defendant setup.[1]

21.

During Plaintiff's January 3, 2017 visit to the Biscayne Branch, a branch manager informed Plaintiff that she did not see where Plaintiff's Wells Fargo Bank Account was setup for automatic payments for her mortgage.

22.

 Plaintiff reiterated to Defendant that her mortgage payments were to be automatically withdrawn from her account and that an automatic payment was previously deducted from the account on December 5, 2016.

---

[1] Plaintiff was advised to take this action by Defendant and the attorney present representing Defendant's interest at Plaintiff's home loan refinancing closing.

23.

Insisting on keeping her mortgage paid on time, and the account current, Plaintiff asked the account manager what she could do to make sure her mortgage was paid on time.

24.

On January 3, 2017, during the visit wherein Plaintiff was informed that no automatic drafts appeared on her Wells Fargo Bank Account, a branch manager instructed Plaintiff to write a check for the January 2017 mortgage payment, if she wanted to ensure that the payment would be made on time and that the home loan account would be kept current.

25.

As instructed by Defendant and its agents, Plaintiff wrote out check number ███ (hereinafter "Check No. ███"), from her Wells Fargo Bank Account, in the amount of ███████████████████ Dollars and ███████ cents ($██████), which was the exact amount of her January 2017 mortgage payment.

26.

Approximately two (2) days later, the same branch manager called Plaintiff to inform her that there **_was_** an automatic withdrawal scheduled to come out of her Wells Fargo Bank Account for her January 2017 mortgage payment.

27.

The branch manager informed Plaintiff that she would stop the double payment.

28.

However, unbeknownst to Plaintiff at the time, the branch manager failed to put a stop payment on Check No. 7187, as instructed by Plaintiff.

29.

In direct contradiction to Plaintiff's instructions and request, and unbeknownst to Plaintiff at the time, the branch manager cancelled the automatic payments that was setup for Plaintiff's mortgage.

30.

On or about February 5, 2017, pursuant to the automatic payments setup on Plaintiff's Wells Fargo Bank Account, Defendant properly withdrew ███████████ ██████████████████ Dollars and ██████████ cents ($ ███████), for Plaintiff's February 2017 mortgage payment (hereinafter "February 2017 mortgage payment").

31.

On February 8, 2017, *unbeknownst to* Plaintiff at the time, Defendant reversed the automatic payment for the February 2017 mortgage payment, as a result of the branch manager at Defendant's Biscayne Branch permanently cancelling Plaintiff's automatic payments that were setup on her Wells Fargo Bank Account.

32.

On or about February 10, 2017, Plaintiff reviewed the balance of her Wells Fargo Bank Account, which is when she noticed that the balance was inconsistent with the amount that should be available, after withdrawal of her February 2017 mortgage payment.

33.

As a result of the same, Plaintiff went to Defendant's branch located at 12830 Highway 9 N., Alpharetta, Georgia 30004 (hereinafter "Windward Commons Branch"), and conferred with a personal banker, on the same date.

34.

On February 10, 2017, two (2) days *after* Defendant reversed Plaintiff's mortgage payment, Plaintiff was informed, and reassured by Defendant's agents at its Windward Commons Branch location that Plaintiff's February 2017 mortgage payment was made, that the payment was timely made on February 5, 2017, and was made pursuant to the automatic payments, which were still setup on her Wells Fargo Bank Account.

35.

During the same visit on February 10, 2017, the personal banker reassured Plaintiff that her February 2017 mortgage payment was withdrawn from her account on February 5, 2017, and was thus, timely, and correctly applied to her mortgage, by

printing out a statement (current through the present date of February 10, 2017) from Plaintiff's Wells Fargo Bank Account, which showed the February payment deducted from the account.

36.

On March 8, 2017, Defendant contacted Plaintiff by phone and informed her that her February and March 2017 mortgage payments were late.

37.

The March 8, 2017 telephone call from Defendant was Plaintiff's first alert about the late payments on the account.[2]

38.

On the March 8, 2017 telephone call, Defendant informed Plaintiff that they were trying to call her on a phone number that did not belong to Plaintiff.

However, Defendant, coincidently, managed to reach Plaintiff that day on the telephone, with the only phone number that Plaintiff provided to Defendant and the only number that she has had for her personal use for more than a decade.

---

[2] While Defendant produced them on April 6, 2017, two (2) months later, Defendant did not provide, and Plaintiff did not receive any mortgage statement for the month of February 2017.

Notwithstanding, despite 1) the Biscayne Branch manager erroneously and permanently cancelling Plaintiff's automatic payments setup on her Wells Fargo Bank Account on or around January 5, 2017, and 2) Plaintiff's February 2017 mortgage payment being reversed on February 8, 2017, the **February 16, 2017** Statement from Defendant stated that auto drafts were still setup on Plaintiff's account. ("This is not a bill, our records indicate your payments **_are_** scheduled to withdraw automatically.") (emphasis added).

39.

On or about March 8, 2017, during the telephone conversation, and after first being alerted of the purported late payments, Defendant said it was debiting both, February and March 2017 mortgage payments, which totaled ████████ ████████ Dollars and ████ cents ($████) from Plaintiff's Wells Fargo Bank Account.

However, Defendant called Plaintiff back approximately two (2) hours later to inform Plaintiff that they could not actually debit her account due to errors with Defendant's system.  Defendant informed Plaintiff due to their inability to process the debit transaction, immediately, that no payment would post until the *next* business day, which would further delay Defendant from posting Plaintiff's mortgage payments to her account.[3]

40.

Despite Defendant properly applying the previous payments on the March 8, 2017 phone call, Defendant informed Plaintiff that it already reported the alleged late February 2017 mortgage payment to the credit bureaus.

41.

Due to Defendant's error causing her automatic payments to be permanently cancelled, and due to the misinformation that was repeatedly giving to Plaintiff,

---

[3] The delay in processing the March 8, 2017 transaction, again, was due to no fault of Plaintiff's.

assuring her that the payments were made and that the automatic payments were setup on the account, and the lack of information and notice regarding the February and March 2017 mortgage payments, Plaintiff immediately informed Defendant that she wanted to file an appeal or a complaint, and asserted that she had automatic payments setup therefore she was never late and the payments were timely taken from her account, therefore she never missed a payment.

42.

On March 9, 2017, Defendant wrote Plaintiff to acknowledge her inquiry regarding the error of terminating her automatic payments, and to inform her that the expected date to provide results of its investigation would be on or before March 23, 2017.

43.

On March 23, 2017, Defendant extended the resolution date to April 6, 2017.

44.

On or about April 5, 2017, the automatic mortgage payments were reinstated and posted to Plaintiff's Wells Fargo Bank Account.

45.

On April 6, 2017, Defendant informed Plaintiff that it declined to resolve Plaintiff's issues and complaint.

46.

Despite a telephone representative confirming on the March 8, 2017 call that Defendant erroneously was attempting to contact Plaintiff at another telephone number that did not belong to her, on April 6, 2017, Defendant wrote in its letter that the collection attempts Defendant made to Plaintiff were at the correct numbers.

47.

In or around April 2017, Plaintiff retained an attorney.

48.

On April 11, 2017, Plaintiff's attorney wrote a letter to Defendant requesting that it correct its errors, reaffirmed that Plaintiff was never late or missed a payment, and that Plaintiff was entitled to damages pursuant to their agreement.

49.

On April 12, 2017, Defendant wrote Plaintiff and acknowledged receipt of her attorney's letter.

50.

In the same correspondence, Defendant informed Plaintiff that the expected date to provide results of its investigation would be on or before April 25, 2017.

51.

On April 25, 2017, Defendant extended the resolution date to May 9, 2017.

52.

On May 11, 2017, Defendant wrote a letter to Plaintiff acknowledging that the branch manager *did* permanently cancel the automatic payments that was setup on Plaintiff's Wells Fargo Bank Account, after the branch manager erroneously informed Plaintiff that there was no automatic payments setup for her account.

53.

On or around July 21, 2017, Plaintiff's attorney wrote Defendant emphasizing that the admission (of cancelling the automatic payment, and not putting a stop on the check) was evident of breach of the parties' Consumer Account Agreement, and thereby demanded that it correct its errors and provide reimbursement of damages.

54.

On August 16, 2017, Defendant acknowledged Plaintiff's letter and provided an expected resolution date of August 29, 2017.

55.

To date, Defendant has failed to remedy its errors and to reimburse Plaintiff for damages sustained due to its intentional acts, negligence, and breach of contract.

56.

As a result of Defendant's improper acts, Plaintiff has been substantially damaged, has suffered emotionally, physically and financially from this entire ordeal.

## COUNT I - BREACH OF CONTRACT

### 57.

Plaintiff incorporates herein by reference the allegations of the previous paragraphs of this Complaint as if each were fully set forth herein in their entirety.

### 58.

Plaintiff and Defendant entered into a valid, and binding contract (hereinafter "Consumer Account Agreement"), of which Defendant maintains a copy of and has in its possession and control.

### 59.

During all of the relevant times referenced in this Complaint, Plaintiff complied and properly performed under the contract.

### 60.

Specifically, the Consumer Account Agreement required Plaintiff to:

a. Examine account statement promptly and carefully;
b. Notify Defendant promptly of any errors;
c. Notify Defendant within 30 days after Defendant has made account statement available of any unauthorized transactions on the account; and
d. Notify Defendant within 6 months after Defendant has made account statement available if she identified any unauthorized, missing or altered endorsements on her items.

### 61.

As previously stated above, the issues began to occur with Plaintiff's account in January 2017.

14

62.

At each occurrence or of Defendant's error, or after any suspicious observation, Plaintiff promptly notified Defendant, pursuant to the terms of the Consumer Account Agreement.

a. In January 2017, Plaintiff contacted Defendant to stop the double payment from withdrawing from Plaintiff's Wells Fargo Bank Account.
b. On February 10, 2017, Plaintiff contacted Defendant about the balance of her account not reflecting the automatic payment for her February 5, 2017 mortgage payment.
c. In March, April, and July 2017, Plaintiff alerted Defendant verbally and in writing that she was never late; and that she did not authorize anyone to cancel her automatic payment for her mortgage.

63.

Thus, all conditions required for Defendant's performance had occurred.

64.

However, Defendant's conduct did not comport with the terms of the Agreement or with the standards followed by similarly situated banks.

65.

Specifically, the Consumer Account Agreement, which include the "Investigations" section and the "Our Liability for Failure to Make Transfers," required Defendant to:

a. Determine whether an error occurred within 10 business days after receiving an inquiry from its consumers;
b. Correct any error reported promptly;

   c.  Credit any account the consumer thinks is in error within 10 business days, no later than 20 business days, if an investigation takes longer or up to the limit of 45 days to investigate;

   d.  Inform the consumer of the results within 3 business days after completing its investigation;

   e.  Provide documents to Plaintiff that it used in its investigation; and

   f.  Compensate Plaintiff for her losses and damages as a result of the uncompleted transfers.

66.

Defendant breached the Consumer Account Agreement when it:

   a.  Cancelled Plaintiff's automatic payments, without authorization in January 2017 for both Plaintiff's mortgage and CitiBank merchant card;

   b.  Failed to stop payment on the check Plaintiff wrote, at the direction of one of its agents, after she was improperly informed that the automatic payments were not setup on her Well Fargo Bank Account;

   c.  Failed to complete transfers, on time, from Plaintiff's Wells Fargo Bank Account for her February and March 2017 monthly mortgage payments and CitiBank merchant credit card;

   d.  Failed to timely notify Plaintiff regarding purported deficiencies related to her February and March 2017 mortgage payments;

   e.  Failed to resolve its investigations in a timely manner, pursuant to the Consumer Account Agreement; and

   f.  Failed to reimburse and compensate Plaintiff for her loss and damages, pursuant to the Consumer Account Agreement.

67.

Thus, Defendant's conduct did not comport with Plaintiff's reasonable contractual expectations under several specific parts of the contract, which include, but are not limited to the Consumer Account Agreement's "Investigation" provision, and "Our Liability for Failure to Make Transfers" provision.

68.

As a direct result of Defendant's conduct and breach, Plaintiff was harmed, and suffered monetary damages (which include expenses of this litigation, court costs and attorney's fees); severe emotional distress; and loss time away from work.

69.

Wherefore, Plaintiff is entitled to recover damages, expenses of litigation and attorney's fees from Defendant for its breach of contract, and therefore prays that this Court grant the same.

## **COUNT II - BREACH OF IMPLIED COVENANT OF GOOD FAITH**

70.

Plaintiff incorporates herein by reference the allegations of the previous paragraphs of this Complaint as if each were fully set forth herein in their entirety.

71.

Plaintiff and Defendant's contract has an implied covenant of good faith, and fair dealing in the contract's performance and enforcement.

72.

Defendant breached its Consumer Account Agreement with Plaintiff when it admittedly cancelled Plaintiff's automatic payments for her mortgage and Citibank merchant card.

73.

Defendant breached its implied covenant of good faith and fair dealing when it cancelled Plaintiff's automatic payments, without specific instruction from Plaintiff, and when it failed to reimburse Plaintiff for her losses and damages, pursuant to the Consumer Account Agreement.

74.

Wherefore, Plaintiff is entitled to recover damages, expenses of litigation and attorney's fees from Defendant for its breach of implied covenant of good faith and fair dealing, and therefore prays that this Court grant the same.

## COUNT III NEGLIGENCE

75.

Plaintiff incorporates herein by reference the allegations of the previous paragraphs of this Complaint as if each were fully set forth herein in their entirety.

76.

At all times material hereto, Defendant is a financial services company.

77.

At all times material hereto, Defendant had a legal duty to Plaintiff, including one imposed by the Electronic Funds Transfer Act.

78.

Defendant owed Plaintiff a duty of ordinary care that a similarly situated financial services company would provide in handling Plaintiff's financial transactions and in servicing her home loan.

79.

Defendant's duty to Plaintiff included, amongst other obligations, providing notice to Plaintiff about her accounts' statuses; competent financial advice, investigating claims, clarifying and remedying technical defects; processing authorized transactions; and not to unduly cause harm to Plaintiff.

80.

Defendant breached its duty to Plaintiff when it failed to exercise ordinary care that a similarly situated financial service company would provide, in handling Plaintiff's financial account and servicing her home loan.

Specifically, Defendant breached its duty to Plaintiff when it:

a. Terminated, without authorization or regard for her financial affairs and transactions, Plaintiff's automatic payments for her mortgage and her CitiBank merchant credit card;

b. Failed to provide timely notice to Plaintiff regarding reversal of her mortgage payments, issues with Plaintiff's Wells Fargo Bank Account, and regarding the termination of the automatic payments setup on Plaintiff's Wells Fargo Bank Account.

81.

As a proximate result of Defendant's negligence, Plaintiff was harmed, and suffered monetary damages (which include expenses of this litigation, court costs and attorney's fees); severe emotional distress; and loss time away from work.

82.

Wherefore, Plaintiff is entitled to recover damages, expenses of litigation and attorney's fees from Defendant for its negligence, and therefore prays that this Court grant the same.

## COUNT IV - RESPA VIOLATIONS

83.

Plaintiff incorporates herein by reference the allegations of the previous paragraphs of this Complaint as if each were fully set forth herein in their entirety.

84.

Plaintiff has suffered an injury in fact through Defendant's conduct of reporting Plaintiff's inaccurate payment history to credit reporting agencies, and as a result, Plaintiff has suffered a negative impact to her longtime, positive credit score, incurred legal fees, emotional trauma, and other actual damages which included fees and other expenses resulting from Defendant's violation under RESPA.

85.

If Defendant is found liable for the conduct as alleged herein, this Court can redress the injury through an award of damages and/or injunctive relief to remedy the effects of Defendant's activity and deter Defendant from engaging in similar conduct in the future.

86.

At all times material hereto, Defendant violated § 2605 of the Real Estate Settlement Procedures Act by failing to take timely action in response to Plaintiff's request to correct errors regarding the allocation of monthly payments related to Plaintiff's mortgage account.

87.

Plaintiff notified Defendant within six (6) months of the discrepancy regarding her account as the balance was too high for a mortgage payment to have been drafted. Defendant did not complete nor correct the error for the February 2017 or March 2017 mortgage payments.

88.

Defendant's failure to correct or respond to the error resulted in Defendant's inaccurate reporting of Plaintiff's payment history to credit bureaus.

89.

Plaintiff became aware of a discrepancy with her February 2017 mortgage payment and notified Defendant of the issue.

90.

Defendant violated § 2605 of the Real Estate Settlement Procedures Act by reporting inaccurate payment information despite Plaintiff disputing the February 2017 payment at the time.

91.

Thus, Defendant failed to comply with § 2605 of the Real Estate Settlement Procedures Act and is liable for all actual damages caused to Plaintiff.

## COUNT V – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

92.

Plaintiff incorporates herein by reference the allegations of the previous paragraphs of this Complaint as if each were fully set forth herein in their entirety.

93.

Defendant did knowingly and intentionally terminate Plaintiff's automatic payments for her mortgage and for her CitiBank merchant credit card.

94.

Defendant's unauthorized termination of Plaintiff's automatic payments to her mortgage and to her CitiBank merchant credit card was reckless.

95.

Defendant's unauthorized termination of Plaintiff's automatic payments to her mortgage and to her CitiBank merchant credit card and its failure to correct the same, caused Plaintiff to experience severe emotional distress.

96.

Prior to Defendant's unauthorized termination of automatic payments from the Wells Fargo Bank Account, Plaintiff was making timely payments to her mortgage and her CitiBank merchant credit card, and enjoyed outstanding credit, and was never contacted by a mortgage assistance program.

97.

Wherefore, Plaintiff is entitled to recover damages, including punitive damages, expenses of litigation and attorney's fees from Defendant for its intentional infliction of emotional distress.

## COUNT VI – PUNITIVE DAMAGES

98.

Plaintiff incorporates herein by reference the allegations of the previous paragraphs of this Complaint as if each were fully set forth herein in their entirety.

99.

Defendant's acts were willful, wanton and demonstrated that entire want of care, which raises the presumption of a conscious indifference to the consequences.

100.

Accordingly, Defendant is liable to Plaintiff for punitive damages to punish, penalize and deter Defendant from similar conduct in the future.

## ATTORNEY'S FEES

101.

The allegations of the above paragraphs are incorporated herein by reference.

102.

Plaintiff is entitled to her reasonable attorney's fees, and expenses of litigation, including her other losses and damages, under the Consumer Account Agreement, as the parties agreed that Defendant would be liable for Plaintiff's losses or damages resulting from Defendant's failure to make transfers.

103.

Additionally, Defendant has acted in bad faith, has been stubbornly litigious, and has caused Plaintiff unnecessary trouble and expense, entitling Plaintiff to recover attorney's fees and expenses under O.C.G.A. § 13-6-11.

**WHEREFORE,** Plaintiff prays that the following relief be granted:

(a) A trial by jury;

(b) For Summons and Complaint to be issued against Defendant;

(c) For judgment be awarded to Plaintiff against Defendant for:

    a.  Actual damages;

    b.  pain and suffering, past, present and future;

    c.  compensatory damages for all such economic and non-economic loses as may be shown at the hearing of this matter to the full extent allowed under law;

    d.  punitive damages;

    e.  expenses of litigation, including attorney's fees;

(d) For past and present attorney's fees, court costs, discretionary costs and prejudgment interest; and

(e) For all such further and general relief which this Court deems just and proper.

Dated:  July 15, 2019.

**KRYSTAL M. MOORE, LLC**

 _/s/ Krystal M. Moore
Krystal M. Moore
Georgia State Bar No. 452370
P.O. Box 55012
Atlanta, Georgia 30308
Email: Krystal@attymoore.com
Phone:  404-423-2424

*Counsel for Plaintiff Susan Polk*

## <u>CERTIFICATION OF TYPEFACE COMPLIANCE</u>

Pursuant to LR 7.1(D), NDGa., counsel for Plaintiff Susan Polk hereby certifies that this Amended Complaint has been prepared with one of the font and point selections approved by the Court in LR 5.1(C), NDGa.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

SUSAN POLK,

     **Plaintiff,**

v.

WELLS FARGO BANK, N.A. (Inc.),

     **Defendant.**

**Civil Action Case No.:**
**1:19-cv-930-CAP-CCB**

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing Amended Complaint with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing upon Counsel of Record.

Dated:  July 15, 2019

**KRYSTAL M. MOORE, LLC**

 _/s/ Krystal M. Moore
Krystal M. Moore
Georgia State Bar No. 452370
P.O. Box 55012
Atlanta, Georgia 30308
Email: Krystal@attymoore.com
Phone:  404-423-2424

*Counsel for Plaintiff Susan Polk*

27